UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

DELILAH MEDIA GROUP, L.P.,           )
                                     )
          Plaintiff,                 )
                                     )     CIVIL ACTION NO.
VS.                                  )
                                     )     3:05-CV-0021-G
V.L. RAYMER a/k/a VIRGINIA           )
COMITO,                              )
                                     )
          Defendant.                 )

MEMORANDUM OPINION AND ORDER

Before the court is the motion of the defendant V.L. Raymer, a/k/a Virginia Comito ("Comito") to set aside the default entered on March 24, 2005 and the judgment entered on March 31, 2005. For the reasons stated below, Comito's motion is denied.

I. BACKGROUND

This case involves the alleged bad faith registration and use of a domain name. Delilah Media Group, L.P. ("Delilah Media") is the sole and exclusive owner of the service marks DELILAH and DELILAH AFTER DARK (collectively, the "Delilah Marks"). Plaintiff's Original Complaint ("Complaint") ¶¶ 8, 10. In 1990, Delilah

Rene ("Delilah") started "Delilah After Dark," an evening radio show that offers encouragement and advice to its listeners through faith, adult contemporary music, and words of inspiration. *Id*. ¶ 12.  Since that time, Delilah Media's nationally syndicated show has grown to a top-rated show that airs on approximately 210 stations in 48 states and in Canada. *Id*. ¶ 13.  Delilah Media uses the Delilah Marks in its primary domain, www.radiodelilah.com.  *Id.* ¶ 16.

In 1998, the domain name at issue, www.delilah.com, was created by and registered to Comito. *Id*. ¶ 18.  The services and materials on the website have no relation to Delilah Media or to the Delilah radio show. *Id*. ¶ 20.  Visitors to the website are "trapped" in the site, *i.e.*, they cannot exit the site without clicking on one or more "pop-up"advertisement windows. *Id*.  Comito, in turn, receives revenue from advertisers for linking visitors to other commercial sites. *Id*.

Delilah Media filed suit on January 4, 2005, alleging that V.L. Raymer, a/k/a Virginia Comito ("Comito"), engaged in bad faith registration of a domain name identical to the name and trademarks of Delilah Media, in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*., including the Anti-Cybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d)(1)(A), as well as state and federal unfair competition laws.  See generally *id*.  Delilah Media contends that the Delilah Marks are distinctive, famous, and nationally recognized as that of Delilah and her nationally syndicated radio program. *Id*. ¶¶ 2, 14, 15.

Delilah Media served Comito on January 19, 2005, and filed the return of service on January 26, 2005. *See* Summons in a Civil Case (filed Jan. 26, 2005). Shortly thereafter, Delilah Media and Comito entered into settlement discussions. Plaintiff's Motion for Entry of Default and For Default Judgment and Brief in Support ("Motion for Default Judgment") at 1. Delilah Media granted Comito an extension of time to respond to the lawsuit until February 15, 2005; however, Comito never filed an unopposed motion to extend the answer date or an answer. Plaintiff's Brief in Support of Its Response to Defendant's Motion to Set Aside Entry of Default and Default Judgment ("Delilah Media's Response") at 1; Declaration of John F. Martin ("Martin Declaration") ¶¶ 5-6, *attached to* Appendix to Plaintiff's Motion for Entry of Default and for Default Judgment at 5. Although Comito surrendered possession of the domain name at issue, she failed to execute a settlement agreement between the parties. Motion for Default Judgment at 1-2. Since Comito failed to execute the settlement agreement, Delilah Media moved on March 23, 2005 for an entry of default and for default judgment. See generally *id*. On March 28, 2005, the clerk entered the default and on March 31, 2005, the court issued a final default judgment. *See generally* District Clerk's Entry of Default ("Entry of Default"); Final Default Judgment Against V.L. Raymer a/k/a Virginia Comito and Permanent Injunction ("Final Default Judgment").

Comito filed this motion on May 13, 2005 to set aside the entry of default and the default judgment in this case. *See generally* Defendant Comito's Motion to Set Aside Entry of Default and Default Judgment ("Comito's Motion to Set Aside Entry of Default"). In that motion, Comito contends that the judgment is void because: (1) Comito was not served pursuant to Texas Rules of Civil Procedure 108 and (2) the court erred in awarding Delilah Media attorney's fees in the judgment. *Id*.

## II. ANALYSIS

### A. Default Judgment

The decision to set aside an entry of default under Federal Rule of Civil Procedure 55(c)[*] or to grant relief from a default judgment under Federal Rule of Civil Procedure 60(b) is within the discretion of the district court. See *CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60, 63 (5th Cir. 1992). Federal courts generally disfavor default judgments, preferring to resolve disputes according to their merits. *Lindsey v. Prive Corporation*, 161 F.3d 886, 893 (5th Cir. 1998); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir. 1981) (noting that Rule 60(b) should be "applied most liberally to judgments in default"). The Fifth Circuit has held that a district court must set aside a default judgment as void if it determines that it lacked personal jurisdiction over the defendant because of defective service of process. See,

---

[*] "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." FED. R. CIV. P. 55(c).

*e.g.*, *Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir. 1988); *Leedo Cabinetry v. James Sales & Distribution, Inc.*, 157 F.3d 410, 412 (5th Cir. 1998) ("[W]hen a district court lacks jurisdiction over a defendant because of lack of service of process, the default judgment is void and must be set aside under Rule 60(b)(4)."). Valid service of process is a prerequisite to a court's assertion of personal jurisdiction over a defendant. See *Omni Capital International, Ltd. v. Rudolf Wolff & Company, Ltd.*, 484 U.S. 97, 104 (1987). It is well established that defendants, to raise a jurisdictional defect, need not appear in a federal court which lacks authority to exercise personal jurisdiction over them. Defendants are "always free to ignore . . . judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Insurance Corporation of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706 (1982); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir. 1987).

In this case, Comito contends that because she was never properly served, the court lacked personal jurisdiction and the default judgment entered against her should be declared void. Defendant Comito's Brief in Support of Her Motion to Set Aside Entry of Default and Default Judgment ("Comito's Brief to Set Aside Entry of Default") at 1-2. In taking this course of action, Comito is well within her rights. "The principle that a party may silently suffer a default judgment and later challenge personal jurisdiction is a 'foundational principle of federal jurisdiction law.'" *Jackson*

*v. FIE Corporation*, 302 F.3d 515, 522-23 (5th Cir. 2002) (quoting *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389, 397 (5th Cir. 2001)).  If the court determines that Comito was never properly served, it has no choice but to declare the default judgment against her void.  See *id.* at 522.

The rules governing service of process are set forth in Rule 4 of the Federal Rules of Civil Procedure.  An individual within a judicial district of the United States may be served:

> (1)  pursuant to the law of the state in which the district court is located, or in which service is effected, for the service of a summons upon the defendant in an action brought in the courts of general jurisdiction of the State; or
>
> (2)  by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

FED. R. CIV. P. 4(e).  While Rule 4 provides that service upon an individual may be effected in any judicial district of the United States pursuant to the law of the state in which the district court is located, or in which service is effected, service may also "be effected by any person who is not a party and who is at least 18 years of age," FED. R. CIV. P. 4(c)(2), by personally "delivering a copy of the summons and of the complaint to the individual." FED. R. CIV. P. 4(e)(2).

Comito argues that because the return of service is not in strict compliance with the Texas Rule of Civil Procedure 108, which requires the person serving the citation and petition to swear in the return of service that he is a disinterested party, this court lacks jurisdiction over her. Comito's Brief to Set Aside Entry of Default at 2.  Comito's argument lacks merit, however, because it ignores the fact that Delilah Media complied with the provisions of the Federal Rules of Civil Procedure.  *See* FED. R. CIV. P. 4(e); 4A CHARLES ALAN WRIGHT & ARTHUR MILLER, FEDERAL PRACTICE AND PROCEDURE § 1094 (3d ed. 2002) ("[I]f any of the methods of service authorized in Rule 4 is properly employed, the service is effective and the defendant is subject to the court's jurisdiction regardless of whether the summons actually was received . . . ."). In this case, the documents on file with the court reflect that Comito was personally served on January 19, 2005 by Daniel H. Casas ("Casas"), a registered process server in San Benito County, California.  *See* Summons in a Civil Case (filed Jan. 26, 2005); *see also* Martin Declaration ¶ 3; Declaration of Daniel H. Casas ("Casas Declaration") ¶ 3, *attached to* Plaintiff's Appendix in Support of Its Response to Defendant's Motion to Set Aside Entry of Default and Default Judgment as Exhibit 1.  Accordingly, this court finds that Comito was properly served under Rule 4.

Additionally, since process was effected in California, the court concludes that Comito was properly served under California law.  Under the California Code of Civil

Procedure, a "summons may be served by any person who is at least 18 years of age and not a party to the action." CAL. CIV. PROC. CODE § 414.10 (West 2004). The relevant statute provides:

> A summons may be served by personal delivery of a copy of the summons and of the complaint to the person to be served. Service of a summons in this matter is deemed complete at the time of such delivery.
>
> The date upon which personal delivery is made shall be entered on or affixed to the face of the copy of the summons at the time of its delivery. However, service of a summons without such date shall be valid and effective.

CAL. CIV. PROC. CODE § 415.10 (West 2004). Since Casas was over the age of eighteen, not a party to this lawsuit, and served the summons and complaint by personal delivery on Comito, he complied with California law. Casas Declaration ¶ 3; *see also* FED. R. CIV. P. 4(e)(1). Accordingly, the court finds that Comito was properly served under California law.

In sum, the documents filed with the court establish that the service of the summons and complaint was proper under the Federal Rules of Civil Procedure and California law. Therefore, this court has jurisdiction over Comito, and the default judgment is not void.

### B.  Award of Attorney's Fees

Comito also contends that the court erred in awarding attorney's fees. Comito's Brief to Set Aside Entry of Default at 2-3. Delilah Media sought attorney's

fees pursuant to 15 U.S.C. § 1117(a), which provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." Although the term "exceptional" is not defined in the statute, the Fifth Circuit has stated that "conduct rising to the level of bad faith could be evidence of the exceptional nature of the case." *Moore Business Forms, Inc. v. Ryu*, 960 F.2d 486, 492 (5th Cir. 1992). Additionally, the exceptional case has been defined as one in which the defendant's trademark infringement "can be characterized as 'malicious,' 'fraudulent,' 'deliberate,' or 'willful.'" *Texas Pig Stands, Inc. v. Hard Rock Cafe International, Inc.*, 951 F.2d 684, 697 (5th Cir. 1992). "The determination as to whether a case is exceptional is left to the sound discretion of the trial court." *Seven-Up Company v. Coca-Cola Company*, 86 F.3d 1379, 1390 (5th Cir. 1996). The prevailing party must demonstrate the exceptional nature of a case by clear and convincing evidence. *CJC Holdings*, 979 F.2d at 65.

In this case, the award of attorney's fees was appropriate because this is an "exceptional case." Delilah Media has pleaded sufficient facts supporting such an award. Comito, by her default, admitted Delilah Media's allegations of fact and is barred from contesting the facts admitted. See *Jackson*, 302 F.3d at 524 ("A default judgment is unassailable on the merits . . . .") (quoting *Nishimatsu Construction Company, Ltd. v. Houston National Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Comito has registered over 2,400 domain names using the well-known names of

people, products, and companies in order to profit from the goodwill and notoriety of others.  See *id*. ¶¶ 21-23.  Comito registered the domain name www.delilah.com in 1998.  *Id*. ¶ 18.  Any visitor to the domain name could not exit the site without clicking on one or more "pop-up" advertisements.  Comito, in turn, received revenue from advertisers for linking visitors to the advertisers' sites.  *Id*. ¶ 20.  Although Delilah requested Comito to cease using the domain name and the "Delilah" service mark and to transfer the domain name to Delilah Media, Comito refused to do so.  *Id*. ¶ 25.  Comito intentionally engaged in bad faith registration with an intent to profit from the good will of the Delilah Marks.  *Id*. ¶ 35.  As a result, Comito's actions have caused irreparable injury to and dilution of the Delilah Marks.  *Id*. ¶¶ 50-51.

There is no doubt that Comito acted willfully and in bad faith when she registered the "Delilah" domain name in an effort to confuse people and misdirect customers seeking Delilah Media's website to Comito's website for her own economic gain.  In fact, Comito conducted no bona fide business related to Delilah Media and she had no basis on which to believe her use of the domain name was fair and lawful.  Therefore, the award of attorney's fees should not be set aside because the court finds, as established by the pleadings, that Comito demonstrated the kind of highly culpable conduct justifying an award of attorney's fees.  Cf. *March Madness Athletic Association, L.L.C. v. Netfire Inc.*, 120 Fed. Appx. 540, 546 (5th Cir. 2005) (affirming the district court's denial of attorney's fees where the trademark rights of the parties

were not readily apparent, where one party failed to prove any damages, and where one party never profited from the operation of the website); see, *e.g.*, *Earthquake Sound Corporation v. Bumper Industries*, 352 F.3d 1210, 1218-19 (9th Cir. 2003) (holding that the "issue is not necessarily one of bad faith: willful or deliberate infringement will suffice" and upholding award of attorney fees under § 1117(a) when, among other things, the defendant "agreed to cease using the 'Carquake' mark and then reneged on that agreement"); *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1023 (9th Cir. 2002) (upholding award of attorney fees under § 1117(a) based on allegation, deemed admitted by virtue of the defendant's default, that defendant acted "knowingly, maliciously, and oppressively, and with an intent to . . . injure" the plaintiff).

### III.  CONCLUSION

For the reasons stated above, Comito's motion to set aside default and default judgment is **DENIED**.

**SO ORDERED**.

June 30, 2005.

_____
A. JOE FISH
CHIEF JUDGE